Rec'd & Filed
Lewis County Superior Court

JUN 11 2021

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF LEWIS

BEATRIZ ALCANTAR, Individually and as Personal Representative of the ESTATE OF JOSHUA FLORES, and JOSHUA FLORES, deceased.

Plaintiffs,

v.

CITY OF CENTRALIA, WASHINGTON, and OFFICERS FREDERICK J. MERCER, AARON M. MILLER, & RUBEN Z. RAMIREZ, in their individual and official capacities,

Defendants.

Case No. 21 2 0032521

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

## I.   NATURE OF ACTION

1.1   This is an action for violations of 42 U.S.C. § 1983 for violations of Plaintiff Joshua Flores' Fourth Amendment rights to be free from excessive force and unreasonable seizure and violations of Plaintiffs' Fourteenth Amendment substantive and due process rights and violations of related Washington state laws.

## II.   PARTIES

2.1   Beatriz Alcantar is the biological mother of Decedent Joshua Flores and the Personal Representative of his estate. Alcantar is a resident of Las Vegas, Nevada; she has designated the

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 1 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Law Offices of Vonda Sargent and Susan Mindenbergs as attorneys of record for the estate of Joshua Flores pursuant to RCW 11.36.010.

2.2   At the time of his death Joshua Flores lived in Centralia, Washington.

2.3   The City of Centralia is a municipal corporation located in Lewis County, Washington. The Centralia Police Department is a department of the City of Centralia, Washington.

2.4   Officers Frederick J. Mercer, Aaron M. Miller, and Ruben Z. Ramirez are Centralia Police Department officers acting within the scope of their employment.

2.5   Officers Frederick J. Mercer, Aaron M. Miller, and Ruben Z. Ramirez were acting under color of law in their individual and official capacities on June 18, 2019, when Officer Mercer shot and killed Joshua Flores and Officers Miller and Ramirez took no action to de-escalate the incident or to use less than lethal force weapons.

### III.   JURISDICTION AND VENUE

3.1   This action arises from the unreasonable seizure, excessive force, and homicide of Joshua Flores committed by Centralia Police Department officers. The incidents giving rise to these actions occurred in Centralia, Washington.

3.2   Jurisdiction is vested in this Court under RCW 2.08.010 and RCW 49.60.030.

3.3   Lewis County is the proper venue for this action pursuant to RCW 4.12.020.

3.4   On or about April 8, 2021, Plaintiffs filed an Administrative Claim for Damages pursuant to RCW 4.96.020. More than sixty days have elapsed since the claim was filed with Defendant City of Centralia.

3.5   The filing of the Administrative Claim for Damages satisfies the notice requirement to the City of Centralia pursuant to RCW 4.96.020.

### IV.   BACKGROUND FACTS

4.1   Joshua Flores (hereinafter referred to as "Joshua") was born August 12, 2000. He was Latino/Latinx.

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 2 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

4.2     All sworn members of the Centralia Police Department are required to complete "a minimum of 40 hours of continuing de-escalation and mental health training every three years as provided in WAC 139-11-020 and WAC 139-11-060." Centralia Police Department Policy Manual, Policy 203.4(b).

4.3     All sworn members of the Centralia Police Department are required to "successfully complete an annual in-service training program on the department use of force and deadly force policies." Centralia Police Department Policy Manual, Policy 203.4(c).

4.4     All sworn members of the Centralia Police Department are required to "successfully complete in-service training on less-than-lethal weapons every two years." Centralia Police Department Policy Manual, Policy 203.4(d).

4.5     Centralia Police Department Policy Manual, Policy 427.6 addresses obligations of officers in de-escalating incidents prior to using force when reasonably safe and feasible. The policy states "officers should consider that taking no action or passively monitoring the situation may be the most reasonable response to a mental health crisis."

4.6     Officers shall only use force that is objectively reasonable, necessary, and proportionate to the act of bringing a person under control. Centralia Police Department Policy Manual, Policy 300.3.

4.7     A factor for Centralia police officers to consider when determining the reasonable force is the individual's mental state or capacity. Centralia Police Department Policy Manual, Policy 300.3.2(e).

4.8     The Defendants owed a duty to Joshua Flores, to use de-escalation tactics and techniques, to follow the provisions of the Centralia Police Department Policy Manual to only use objectively reasonable force, necessary and proportionate. Defendants are in breach of all such duties.

4.9     On June 18, 2019, Joshua Flores was experiencing a mental health crisis.

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 3 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

4.10   Joshua had suffered from the mental illness schizophrenia since his diagnosis at the age of 16.

4.11   Joshua had been taking medication for his mental health condition but had not taken the medication for several days prior to June 18, 2019.

4.12   On or about May 16, 2019, Centralia Police Department officer(s) transported Joshua to the hospital because of his erratic behavior and mental health issues. Centralia Police Officer(s) took Joshua into custody under the Involuntary Treatment Act.

4.13   When Joshua was not taking his medication, he suffered from hallucinations and delusions.

4.14   Joshua arrived at Logan Street in Centralia sometime in the early morning of June 18, 2019.

4.15   According to the police report, Joshua began beating on the door of a home of occupants he did not know and had never met in the neighborhood located on Logan Street. He broke a window in the home but did not enter the home.

4.16   According to the police report, when the occupants of the home yelled at him that there was a baby present and for him to go away, Joshua went to the residence next door to the home of people he did not know and had never met. He beat on a garage door with an instrument where there were four people present.

4.17   According to the police report, several of the occupants of the homes on Logan Street called 911 to request assistance because of Joshua's conduct.

4.18   Joshua left the second residence and wandered down the street out of sight of the occupants of the homes he had been hitting.

4.19   By the time Joshua returned to the neighborhood a few minutes later, Centralia Police Department Officers had arrived.

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 4 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

4.20    The Centralia Police Officers who arrived on scene were Officers Frederick J. Mercer, Aaron M. Miller, and Ruben Z. Ramirez. None of the three officers had dashboard or body-worn cameras.

4.21    Officer Mercer was the first to arrive at the scene.

4.22    Officer Mercer radioed Officer Miller to request that he come to the location where Officer Mercer had located Joshua walking up the street.

4.23    According to the police report, Officer Ramirez proceeded in his patrol car attempting to get Joshua's attention.

4.24    According to the police report, Officer Ramirez radioed Officer Mercer that Joshua was holding a knife.

4.25    According to the police report, Officer Ramirez decided not to deploy his K-9 partner.

4.26    Joshua was holding a butter knife in his hand and did not pose an immediate threat to the safety of officers or others, and he was not attempting to resist arrest or evade arrest by fleeing.

4.27    The shooting occurred at early daylight. The butter knife Joshua held down by his side could be seen clearly by all three officers.

4.28    Joshua was sweating profusely, breathing heavily, and glassy-eyed exhibiting symptoms of excited delirium and a mental health crisis.

4.29    By breaching their duty to de-escalate a situation with a person clearly experiencing excited delirium and a mental health crisis, the three officers caused the situation with Joshua to escalate.

4.30    According to the police report, when Officer Mercer ordered Joshua to drop the knife, Joshua responded repeatedly, "Just do it" indicating that Joshua was suicidal.

4.31    All three officers had their service weapons drawn. Officer Mercer drew his gun with his finger on the trigger when he was more than 35 to 50 feet away from Joshua.

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 5 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

4.32   None of the three officers drew their tasers, although all of three of them had tasers on their non-dominant hip.

4.33   None of the three officers attempted any de-escalation techniques with Joshua.

4.34   There were no civilians present except for one neighbor who was standing a distance away from Joshua and the officers.

4.35   Officer Mercer shot Joshua in the chest as Joshua approached.

4.36   Officers Miller, Ramirez, and Mercer were all within 10 to 12 feet of Joshua when Officer Mercer shot Joshua in the chest.

4.37   All three officers had an opportunity to deliberate on reasonable de-escalation techniques or crisis intervention strategies before Officer Mercer shot and killed Joshua.

4.38   When Officer Mercer shot Joshua in the chest Joshua dropped to his knees then collapsed on his stomach.

4.39   When Officers Mercer and Ramirez approached Joshua, Joshua said, "I'm sorry."

4.40   Officer Ramirez handcuffed the mortally wounded Joshua as he laid on his stomach in the dirt.

4.41   Officer Miller retrieved gauze from his patrol car and placed it under Joshua at the wound site.

4.42   Chief of Police Carl Nielson arrived on scene shortly after Officer Mercer shot Joshua.

4.43   Joshua laid in the dirt face down bleeding from the chest wound while Chief Nielsen spoke with the officers at the scene.

4.44   Officer Miller began photographing the scene.

4.45   An aid car arrived and took Joshua to the hospital where he died.

4.46   Officers Ramirez and Mercer left the scene together to the location where the Critical Incident Investigation Team (CIIT) were conducting interviews.

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 6 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

4.47    Aberdeen Police Sergeant Darrin Wallace conducted the Critical Incident Investigation interview of Officer Frederick J. Mercer on June 24, 2019.

4.48    Officer Ruben Z. Ramirez was present at the Sergeant Wallace interview of Officer Mercer as Officer Mercer's "peer support."

4.49    Sergeant Wallace notified Officer Mercer that the interview was part of a criminal investigation. Sergeant Wallace told Officer Mercer that he would not be reading Officer Mercer his "Miranda" rights or his "Garrity" rights.

4.50    During the interview conducted by Sergeant Wallace, Officer Mercer described the shooting. Officer Mercer said, "this wasn't a squirrel in a tree getting raped by a dog."

4.51    Officer Mercer is a taser instructor for Centralia Police Department. Officer Mercer explained that he did not use his taser because he did not know that he would "trust the taser to work."

4.52    Forensic Pathologist Emmanuel Q. Lacsina, M.D. performed the autopsy on Joshua at the Lewis County Coroner's office in Chehalis, Washington.

4.53    Dr. Lacsina opined that Joshua died of internal bleeding secondary to a penetrating gunshot wound to the chest. Dr. Lacsina noted the manner of death is classified as a homicide.

4.54    Joshua was 18 years old when Officer Frederick J. Mercer shot him to death on June 18, 2019.

4.55    The Defendants' conduct was the proximate cause of the injuries sustained by Plaintiffs Joshua Flores and Beatriz Alcantar.

## V.    CAUSES OF ACTION

5.1    Plaintiffs hereby reallege the substance of sections I, II, III, and IV and by this reference incorporates them herein.

5.2    The City of Centralia is liable under 42 U.S.C. § 1983 for depriving Joshua Flores of his Fourteenth Amendment rights because of its deliberate indifference to Joshua Flores' severe

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 7 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

1  safety needs thereby violating his constitutional rights by failing to have an appropriate policy that
2  could have prevented the violation.

3      5.3    The City of Centralia's failure to adopt more specific policies regarding police
4  interaction with people suffering mental health crises amounted to deliberate indifference to Joshua
5  Flores' Fourteenth Amendment rights and renders the City liable under 42 U.S.C. § 1983.

6      5.4    The City of Centralia's failure to train and equip law enforcement officers with
7  specific tools to handle mental health crises amounted to deliberate indifference and violated Joshua
8  Flores' Fourteenth Amendment rights and renders the City liable under 42 U.S.C. § 1983.

9      5.5    The City of Centralia is liable under 42 U.S.C. §1983 for depriving Joshua Flores of
10 his Fourth Amendment rights to be free from excessive force for failing to have an adequate policy
11 to prevent Fourth Amendment constitutional violations.

12     5.6    Defendants Frederick J. Mercer, Aaron M. Miller and Ruben Z. Ramirez were all
13 acting under color of law when they failed to de-escalate the encounter with Joshua and when Officer
14 Mercer shot and killed Joshua Flores.

15     5.7    Defendant Frederick J. Mercer is liable under 42 U.S.C. § 1983 for violating Joshua
16 Flores' Fourth Amendment rights to be free of seizure and excessive force when he shot Joshua in
17 the chest causing him to bleed to death.

18     5.8    Defendants Frederick J. Mercer, Aaron M. Miller and Ruben Z. Ramirez are liable
19 under 42 U.S.C. § 1983 for violating Joshua Flores' Fourth Amendment rights to be free of seizure
20 and excessive force when they failed to employ any de-escalation techniques or strategies and
21 failed to intervene when it was apparent Joshua Flores was experiencing extreme excited delirium
22 and a mental health crisis.

23     5.9    Defendant Frederick J. Mercer is liable under 42 U.S.C. § 1983 for violating
24 Plaintiff Beatriz Alcantar's Fourteenth Amendment due process interest in a familial relationship
25 with her son, Joshua Flores.

26

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 8 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

5.10 The constitutional rights of Joshua Flores and his mother and Personal Representative Beatriz Alcantar were clearly established at the time of the shooting.

5.11 Defendants are liable for assault and battery against Joshua Flores leading to his wrongful death.

5.12 Defendants are liable for economic and noneconomic damages for the causing the wrongful death of Joshua Flores pursuant to RCW 4.20.020.

5.13 Defendants were negligent when they failed to intervene or de-escalate the situation and failed to employ less than lethal force in the incident with Joshua Flores when his demeanor and affect made clear he was experiencing a mental health crisis.

## VI.   RELIEF REQUESTED

6.1 Plaintiffs hereby reallege the substance of sections I, II, III, IV, and V and by this reference incorporates them herein.

WHEREFORE, Plaintiffs respectfully request this Court grant him relief to include:

a. Economic damages;
b. Emotional distress, pain and suffering, and any medical expenses flowing therefrom, and damages to be proved at trial;
c. Special damages in an amount to be proved at trial;
d. Punitive damages;
e. Plaintiffs' reasonable attorney fees pursuant to 42 U.S.C. § 1988;
f. Costs of suit as provided by 42 U.S.C. § 1988;
g. Prejudgment interest at the highest lawful rate;
h. Tax consequences; and
i. Such other and further relief as the Court may deem just and equitable.

/
/
/

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 9 of 10

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

DATED this 11th day of June 2021.

By: _____
Vonda M. Sargent, WSBA No. 24552
*Attorney for Plaintiffs*
Law Offices of Vonda M. Sargent
119 First Avenue South, Suite 500
Seattle, WA 98104
Telephone: (206) 838-4970
Facsimile: (206) 682-3002
Email: sisterlaw@me.com

By: _____
Susan B. Mindenbergs, WSBA No. 20545
*Attorney for Plaintiffs*
Law Office of Susan B. Mindenbergs
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: susanmm@msn.com

PLAINTIFFS' COMPLAINT FOR DAMAGES
Page 10 of 10

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM